UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADAM TECHNOLOGIES LLC, *Plaintiff*, v. WELL SHIN TECHNOLOGY CO., LTD.; DONGGUAN WELL SHIN ELECTRONIC PRODUCTS CO., LTD.; WELL SHIN USA; and XYZ Companies 1-4, *Defendants*. | Civil Action No. 18-cv-10513  **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on the motion to dismiss filed by Defendants Well Shin Technology Co., Ltd. ("Well Shin Taiwan"); Well Shin Electronics Products Co., Ltd. ("Dongguan Well Shin"); and Conntek Integrated Solutions, Inc. (improperly named as "Well Shin USA")[1] (individually "Conntek" and collectively "Defendants"). D.E. 11. Plaintiff Adam Technologies, LLC ("Adam Tech") filed a brief in opposition to the motion (D.E. 27), to which Defendants replied (D.E. 28).[2] For the reasons set forth below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendants explain that although Plaintiff named "Well Shin USA" as a Defendant in its complaint, to their knowledge, there is no such entity by that name. Defendants continue that the two addresses that Plaintiff attributes to Well Shin USA correspond with Conntek Integrated Solutions, Inc., which is a subsidiary of Well Shin Taiwan. Def. Br. at 1 n.1.

[2] In this Opinion, Defendants' brief in support of their motion to dismiss (D.E. 11-1) will be referred to as "Defs. Br."; Plaintiff's brief in opposition (D.E. 27) will be referred to as "Plf. Opp." and Defendants' reply (D.E. 28) will be referred to as "Defs. Reply." On November 30, 2018, Plaintiff filed a second opposition brief. D.E. 32. There does not appear to be any differences

## I. BACKGROUND[3] AND PROCEDURAL HISTORY

Adam Tech is located in Union, New Jersey, and is a manufacturer and seller of specialized electronic components made or produced by its Taiwan branch, Adam Technologies Int., Ltd. Adam Tech had a contract with General Electric Appliances ("GE") to design and create a custom connector for a wire harness to be used for GE washing machines and other appliances. Compl. ¶ 2, D.E. 1.

On or about July 29, 2014, Conntek executive Mack Davis contacted Adam Tech via email and telephone calls. Mr. Davis' contact allegedly pertained to the purchase of the custom connector for "Well Shin USA," and Conntek's involvement in the GE project. Declaration of Vincent De Vito ("De Vito Decl.") ¶¶ 2-3, D.E. 27-1. Mr. Davis informed Plaintiff that he was part of the "WellShin Group," which includes Wellshin Taiwan,[4] Dongguan Wellshin, and several offices in the United States. *Id.* ¶ 2. Mr. Davis' email address is "mack@wellshinusa.com." *Id.*, Ex. B. Dongguan Well Shin is based in Guangdong, China and also incorporated there.

---

between the November 30, 2018 submission and Plaintiff's initial opposition brief so the Court does not consider the November 30 filing. Then on December 3 and 4, 2018, Plaintiff filed what appears to be two copies of the same sur-reply brief without leave of Court. D.E. 33, 34. Sur-replies are not permitted without first obtaining leave of court. L. Civ. R. 7.1(d)(6). "Accordingly, the Court typically will not consider sur-replies that parties have filed without seeking and receiving leave to do so." *Roofers' Pension Fund v. Perrigo Co., PLC*, No. 16-2805, 2017 WL 3579208, at *3 (D.N.J. Aug. 18, 2017). Because Plaintiff failed to obtain the necessary leave, the Court will not consider Plaintiff's sur-reply.

[3] The factual background is taken from Plaintiff's Complaint (and attached exhibits) and the parties' declarations submitted in connection with this motion to dismiss pursuant to Rule 12(b)(2). *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) ("In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defect, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." (internal citations omitted)).

[4] Well Shin Taiwan is incorporated and based in Taipei City, Taiwan. Declaration of Tim Liu ¶¶ 3-6, D.E. 14. While named as a Defendant, Wellshin Taiwan's involvement in the alleged wrongdoing is not clear from the allegations in the Complaint.

2

Declaration of Ouyang Dong ¶¶ 4-6, D.E. 15. Conntek is incorporated, and has its principal place of business, in Wisconsin. Declaration of Drew Sying Liu ¶¶ 3-4, D.E. 11-2. Conntek also appears to have a factory in Kentucky, in addition to offices in California, Wisconsin, Kentucky and Tennessee. De Vito Decl., Ex. D.

As the connector was a custom design, Adam Tech CEO Vincent De Vito informed Mr. Davis that certain non-Disclosure and non-Compete terms had to be met before further conversations occurred. *Id.* ¶ 4. Mr. Davis agreed and indicated that he would confirm that his Wellshin colleagues in China and Taiwan accepted the terms. *Id.* In furtherance of such an agreement, Mr. De Vito went to China, toured the Dongguan Wellshin facility and met with three employees. *Id.* ¶ 5. While in China, Mr. De Vito emphasized that Adam Tech had to protect its intellectual property and sought to ensure that Wellshin would not compete or use the information against Plaintiff with respect to the GE project. *Id.* Plaintiff alleges that Dongguan Well Shin's Vice President of Sales, James Ouyang, suggested a written agreement, which would be enforceable in New Jersey, to allay Plaintiff's fears. *Id.* ¶ 6.

Mr. De Vito drafted the Non-Disclosure/Non-Compete Agreement (the "Agreement") upon his return to New Jersey. Mr. De Vito sent the Agreement to Mr. Davis, who forwarded it to a Wellshin legal representative, Jui-Hsiung, who was presumably located in China, for signature. Mr. De Vito received an executed copy of the Agreement from Mr. Davis. *Id.* ¶ 6, Ex. C. Subsequently, Dongguan Well Shin began sending purchase orders to Plaintiff who then sent mass quantities of the connector directly to Dongguan Well Shin. *Id.* ¶ 7. Dongguan Well Shin continued to purchase the connector from Plaintiff for approximately two years. Compl. ¶ 23.

In 2017, Dongguan Well Shin began to complain about the quality of the connector and allegedly refused to pay for delivered stock and outstanding invoices. *Id.* ¶ 24. Adam Tech alleges

3

that these were false and unsubstantiated claims. *Id.* ¶¶ 24-25. Adam Tech appears to allege that Dongguan Well Shin began making the false claims because it was manufacturing the connector part itself or through other vendors or manufacturers. *Id.* ¶ 26.

Adam Tech subsequently brought suit, asserting claims for patent infringement, breach of contract, Lanham Act violations, and New Jersey unfair competition violations. In response, Defendants filed this motion to dismiss for lack of jurisdiction, insufficient service of process, and failure to state a claim. D.E. 11.

## II. ANALYSIS

### A. Lack of Personal Jurisdiction

#### 1. Legal Standard

Defendants bring their motion in part pursuant to Fed. R. Civ. P. 12(b)(2), which permits a party to move to dismiss a case for lack of personal jurisdiction. In such a motion, the plaintiff bears the burden of demonstrating "sufficient facts to establish that jurisdiction is proper." *Mellon Bank PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). In reviewing a motion to dismiss for lack of personal jurisdiction, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). But when a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Thus, to withstand a Rule 12(b)(2) motion, a plaintiff may not rely on the pleadings alone, as it "is inherently a matter which requires resolution of factual issues *outside the pleadings.*" *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (emphasis added). In conducting this jurisdictional analysis, district courts may rely upon the parties' declarations for

4

relevant factual support. *See, e.g., Pausch LLC v. Ti-Ba Enters.*, No. 13-6933, 2014 WL 5092649, at *6-7 (D.N.J. Oct. 8, 2014) (using declarations from both parties to conclude that contacts with the forum were insufficient for personal jurisdiction); *Shnayderman v. Cell-U-More, Inc.*, No. 18-5103, 2018 WL 6069167, at *11 (D.N.J. Nov. 20, 2018) (using information from plaintiff's complaint and declaration to determine that defendant did not travel to the forum state or solicit a loan from plaintiff in the forum state). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

A federal court must have both statutory and constitutional authority to assert personal jurisdiction over an out-of-state defendant. *IMO Indus. Inc. v. Kiekert*, 155 F.3d 254, 259 (3d Cir. 1998). This two-step inquiry first looks to the forum state's long-arm statute, then to the Due Process Clause of the Fourteenth Amendment to determine if the exercise of jurisdiction is permitted. *Id.* In New Jersey, however, the two steps are collapsed into a single inquiry because the New Jersey long-arm statute allows for the "exercise [of] jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. J. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted); *rev'd on other grounds*, 564 U.S. 873 (2011). Therefore, for a court to exercise personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

## 2. Analysis

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists if a corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In the present case, the Court lacks general jurisdiction over Defendants as none are incorporated in New Jersey nor have their principal place of business in this state. Well Shin Taiwan conducts its business operations in Taiwan and is incorporated under Taiwanese law. Dongguan Well Shin is incorporated under Chinese law and conducts its business operations there. Conntek is incorporated under the laws of Wisconsin. While Conntek appears to have offices and factories in different parts of the United States, it appears to have no physical presence in New Jersey. Moreover, Plaintiff fails to establish that this is an "exceptional case" that may warrant the exercise of general jurisdiction.

Specific jurisdiction may exist "if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 473. In light of Supreme Court precedent, the Third Circuit has developed a three-part test to determine whether specific personal jurisdiction may be exercised. First, the defendant must have "purposefully directed [its] activities at the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted). The first requirement of this test is also known as "purposeful availment," and seeks to ensure "that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated contacts" or based on the "unilateral activity of another party or third

person." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)). Second, the litigation must "arise out of or relate to at least one of those activities." *Id.* (internal quotation marks omitted). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id.* (internal quotation marks omitted).

For contract claims, a court may also "analyze the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir. 2004). In addition, traveling to the forum to consult with the other party—regardless of who solicited the contact—as well as mail and wire communications, may establish purposeful availment even if physical presence of the party is lacking. *Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). Courts should also consider whether the defendant's contacts with the forum were instrumental in either the formation or breach of the contract. *Id.*; *see also Burger King*, 471 U.S. at 479 ("[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."). "An individual's contract with an out-of-state party *alone*," however, cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478.

Here, Well Shin Taiwan did not purposefully avail itself of the New Jersey forum. In fact, based on the evidence, it is not clear that Adam Tech had any interaction with the entity or that Well Shin Taiwan was involved in the alleged wrongdoing, much less wrongdoing that was

7

directed at this forum. Thus, there is simply no basis upon which the Court could conclude that Well Shin Taiwan purposefully directed any relevant activities to New Jersey. Defendants' motion to dismiss is therefore granted on these grounds as to Well Shin Taiwan.

But this is not the case for Conntek and Dongguan Well Shin. Turning first to Conntek, Mr. Davis initially reached out to Adam Tech—a New Jersey corporation—by phone and email with the purpose of establishing a long-term contractual relationship. De Vito Decl. ¶¶ 2-3. "Parties who reach out beyond [their] state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (internal quotations omitted) (quoting *Burger King*, 471 U.S. at 473). Moreover, Mr. Davis continued to serve as the intermediary between Dongguan Well Shin and Adam Tech while the parties negotiated the contract and to execute the contract.

As for Dongguan Well Shin, although it did not initiate the contact, representatives met with Mr. De Vito in China for contract negotiations. During these negotiations, Adam Tech voiced its concerns as to competition between the parties, and Dongguan Well Shin specifically suggested that the parties enter into an agreement that would be enforceable in New Jersey to protect Adam Tech's intellectual property. Dongguan Well Shin and Adam Tech subsequently entered into the Agreement, which contained a New Jersey choice-of-law provision. Dongguan Well Shin then began to purchase connectors from Adam Tech for approximately two years.

Moreover, both Conntek and Dongguan Well Shin knew or should have known that they were dealing with a New Jersey corporation, as evidenced by the New Jersey choice of law provision agreed upon in the Agreement and e-mail signature of Adam Tech employees indicating that their location was Union, New Jersey. De Vito Decl. ¶ 4, Ex. C. Thus, the totality of the

circumstances supports the conclusion that Conntek and Dongguan Well Shin could have expected to be in a New Jersey courtroom with respect to its interactions with Adam Tech. *See, e.g., Cornish v. Morris Commc'ns Co., LLC*, No. 08-6395, 2009 WL 2169046, at *5 (D.N.J. July 16, 2009) (finding personal jurisdiction over defendant who reached out to a New Jersey resident to initiate business relationship via email, met with plaintiff at the defendant's out of state office to negotiate the contract, then signed contract that the plaintiff mailed and emailed to the defendant).

Defendants argue that the choice of law provision in the Agreement does not establish minimum contacts. Defs. Reply at 3-4. Defendants correctly note that Plaintiff may not rely *solely* on the New Jersey choice of law provision to establish jurisdiction. *Time Share*, 735 F.2d at 65 (a choice of law provision "would not itself be enough to vest jurisdiction."). However, the choice-of-law provision is relevant to the analysis as "a factor in showing whether the defendants could foresee that their acts would have effects in [New Jersey]." *Id.*

Defendants also contend that the "stream of commerce" theory does not establish minimum contacts on these facts since Adam Tech alludes to a stream of commerce argument in its opposition brief. Defs. Reply at 5. The Court, however, concludes that Conntek purposefully availed itself of this forum through its negotiation and execution of the Agreement. In sum, the facts sufficiently establish that Conntek and Dongguan Well Shin purposefully directed their activities at Plaintiff in New Jersey.

The litigation arises out of Conntek and Dongguan Well Shin's contacts with the forum. "[S]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test."[5] *O'Connor*, 496 F.3d at 323. There is no "specific rule" that a court should apply

---

[5] The but-form standard is satisfied "when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *O'Connor*, 496 F.3d at 319.

to determine whether a plaintiff's claims are closely related to a defendant's contacts such that the court has specific jurisdiction. *Id.* But the Third Circuit has explained that the relatedness inquiry is fact-sensitive and "should hew closely to the reciprocity principle upon which specific jurisdiction rests." *Id.*

In broad strokes, Plaintiff alleges that after Conntek reached out to Plaintiff, Plaintiff negotiated and then entered into an agreement to protect its intellectual property with Dongguan Well Shin, all with Conntek's assistance. During the parties' negotiations, Dongguan Well Shin suggested that the Agreement be enforceable in New Jersey and the Agreement contains a New Jersey choice-of-law clause. Plaintiff now alleges that Defendants misappropriated Plaintiff's intellectual property. Accordingly, Plaintiff's claims are sufficiently related to Dongguan Well Shin and Conntek's contacts with this forum as Plaintiff would not have provided Dongguan Well Shin with the connector at issue without the Agreement, and the New Jersey choice-of-law clause enticed Plaintiff to enter into the Agreement and business relationship with Defendants.

Even if a plaintiff proves the first two requirements, "the exercise of jurisdiction must otherwise comport with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotations omitted). Because the first two requirements effectively establish the existence of minimum contacts, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (noting that jurisdiction will be unreasonable in "rare cases" if minimum contacts are established). Courts consider the following factors when assessing fairness: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most effective

resolution of controversies." *Burger King*, 471 U.S. at 477. Here, Defendants fail to argue that exercising jurisdiction in this matter would otherwise offend the traditional notions of fair play and substantial justice. Although Dongguan Well Shin is a foreign entity, the Court sees no reason why New Jersey is an unreasonable forum. Moreover, New Jersey has an interest in protecting its businesses from unfair competition claims.

Accordingly, this Court has specific personal jurisdiction over Dongguan Well Shin and Conntek. Defendants' motion to dismiss is denied on these grounds.

## B. Insufficient Service of Process[6]

Defendants also move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(5), which permits dismissal for insufficient service of process. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Wahab v. N.J. Dep't of Envtl. Prot.*, No. 12-6613, 2017 WL 4790387, at *5 (D.N.J. Oct. 24, 2017) (quoting *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Federal Rule of Civil Procedure 4 governs the requirements that must be met for proper service under Rule 12(b)(5). *DiSantis v. Allied Constr., LLC*, No. 17-11379, 2018 WL 3647210, at *3 (D.N.J. July 31, 2018). In addition, "the party asserting the validity of service bears the burden of proof on that issue." *Grand Entertainment Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993).

### 1. Dongguan Well Shin

Defendants argue that service was improper as to Dongguan Well Shin because it was not served in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Defs. Br. at 11-12. Outside of the United States, a foreign corporation

---

[6] Because this Court only has personal jurisdiction over Conntek and Dongguan Well Shin, the Court will only address service of process as to these Defendants.

"must be served . . . in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). In this instance, Plaintiff personally served Dongguan Well Shin via a courier in Guangdong, China. Ouyang Dong Decl. ¶ 23. Accordingly, service on Dongguan Well Shin was not effective pursuant to Rule 4(f). *See ISPEC, Inc. v. Tex R.L. Indus., Inc.*, No. 12-4339, 2014 WL 4162858, at *4 (D.N.J. Aug. 20, 2014) (rejecting argument that personal service of foreign corporation in Taiwan was effective because "the Rule expressly excludes" such service); *Trump Taj Mahal Assocs. v. Hotel Servs., Inc.*, 183 F.R.D. 173, 179 (D.N.J. 1998) (explaining that the plaintiff "did not effectuate valid service of process on [the defendant] when it personally served [a vice president] in England").

### 2. Conntek

Defendants contend that Adam Tech's service upon Conntek was defective because Adam Tech failed to deliver a copy of the Summons with the Complaint and failed to obtain a signature to acknowledge receipt. Def. Br. at 13; Decl. of Drew Sying Liu ¶ 24 (stating that Conntek was not provided with a Summons during Plaintiff's attempted service). Rule 4(c)(1) requires that a summons be served with a copy of the complaint. *Id.*; *see also Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1187 (3d Cir. 1992) ("[B]efore a court exercises personal jurisdiction over a defendant, the procedural requirement of service of a summons must be satisfied."). Adam Tech counters that service was proper, and in its opposition brief states that it attached a signed return of service with both the Summons and Complaint as exhibits. Plf. Opp. at 15. Adam Tech, however, failed to actually provide these documents. Moreover, the docket does not reflect a return of service as to Conntek. Thus, Plaintiff does not meet its burden of establishing that Conntek was actually served with a copy of the Summons. As a result, service was improper under Rule 4(c)(1). *See Kilinc v. Tracfone Wireless Inc.*, 757 F. Supp. 2d 535, 538

12

(W.D. Pa. Dec. 27, 2010) (dismissing complaint in part because the plaintiff failed to serve both the summons and complaint on the defendant).

Plaintiff argues that service was proper as to both entities because neither Defendant was prejudiced by the improper service. Plf. Opp. at 14. Plaintiff, however, provides no legal support for this theory and the Court is not aware of any. As a result, Plaintiff's argument is rejected.

"[D]istrict courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Courts are "reluctant to dismiss an action" when a plaintiff acts in good faith but fails to effectuate proper service. *Ramada Worldwide Inc. v. Shriji Krupa, LLC*, No. 07-2726, 2013 WL 1903295, at *6 (D.N.J. Apr. 15, 2013); *see also Hoist v. New Jersey*, No. 12-5370, 2013 WL 5467313, at *3 (D.N.J. Sept. 30, 2013) (noting that courts will grant additional time to a plaintiff who acts in good faith to properly serve a defendant despite prior failure to effect proper service of process). If there is a reasonable prospect that service can be properly effected, courts quash service and provide a plaintiff with additional time to effectuate proper service upon the defendant. *Hoist*, 2013 WL 5467313, at *5-6; *Ramada Worldwide, Inc.*, 2013 WL 1903295, at *6 (recommending that plaintiff be afforded with an additional sixty days to effect proper service after finding service was attempted in good faith but to the wrong address).

In this instance, it appears that Adam Tech attempted to serve Dongguan Well Shin and Conntek in good faith, and there is no indication that either entity cannot be served. Although service was procedurally improper, Dongguan Well Shin and Conntek were nevertheless provided with a copy of the Complaint and filed the instant motion to dismiss. Thus, Defendants clearly

had actual notice of this matter and have not been prejudiced by Plaintiff's improper service.[7] *See Ramada Worldwide, Inc.*, 2013 WL 1903295, at *7 (granting plaintiff additional time to effect proper service because defendant had actual notice of the suit but "proper service is more than a formality, and *must be effectuated*") (emphasis added). As a result, Adam Tech is granted leave to re-serve Dongguan Well Shin and Conntek.

In sum, the Court concludes that service as to both entities was improper. As a result, service is quashed and Plaintiff is granted an additional sixty (60) days to effect proper service of process. Because Plaintiff is granted leave to re-serve Dongguan Well Shin and Conntek, Defendants' motion to dismiss is denied without prejudice at this time.

## III. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order accompanies this opinion.

Dated: August 12, 2019

John Michael Vazquez, U.S.D.J.

---

[7] Defendants argue that they were prejudiced by Plaintiff's improper service because Dongguan Well Shin could not properly understand the case without translated copies and Conntek did not know when it was required to respond without a copy of the summons. Defs. Reply at 8. Given the fact that both Defendants filed a timely motion to dismiss in this matter, this prejudice, especially as to Conntek, appears minimal at best.

14