**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ADAM TECHNOLOGIES LLC,

       *Plaintiff*,

   v.

WELL SHIN TECHNOLOGY CO., LTD.; DONGGUAN WELL SHIN ELECTRONICS PRODUCTS CO., LTD.; WELL SHIN USA; and XYZ Companies 1-4,

       *Defendants*.

Civil Action No. 18-cv-10513

**OPINION**

**John Michael Vazquez,  U.S.D.J.**

This matter comes before the Court on (1) the November 4, 2020 Order to Show Cause ("OTSC") addressing the Court's subject matter jurisdiction, D.E. 99; (2) Defendant Conntek Integrated Solutions, Inc.'s (improperly named as "Well Shin USA" and referred to herein as "Conntek") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), D.E. 84; and (3) the motion to dismiss filed by Defendant Dongguan Well Shin Electronics Products Co., Ltd. ("Well Shin"), D.E. 94.  Plaintiff Adam Technologies, LLC ("Adam Tech.") filed briefs in opposition to both motions, D.E. 88, 95, to which Defendants replied, D.E. 92, 96.  The parties also filed letters in response to the OTSC.  D.E. 100-03.[1]  For the reasons set forth below, the Court

---

[1] In this Opinion, Conntek's brief in support of its motion to dismiss (D.E. 84-1) will be referred to as "Conntek Br."; Plaintiff's brief in opposition to Conntek's motion to dismiss (D.E. 88) will be referred to as "Plf's Conntek Opp." and Conntek's reply (D.E. 92) will be referred to as "Conntek Reply."  Well Shin's brief in support of its motion to dismiss (D.E. 94-1) will be referred to as "Well Shin Br."; Plaintiff's brief in opposition to Well Shin's motion to dismiss (D.E. 95) will be referred to as "Plf's Well Shin Opp."; and Well Shin's reply brief (D.E. 96) will be referred to as "Well Shin Reply".  Plaintiff's letter in response to the OTSC (D.E. 100) will be referred to as

concludes that it has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  In addition, Defendants' motions to dismiss are **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND AND PROCEDURAL HISTORY

As the parties are familiar with this matter, the Court does not provide a detailed factual recitation.  Instead, the Court reviews relevant facts here and discusses certain additional facts in the analysis section below.[2]

Adam Tech. is a manufacturer and seller of specialized electronic components made or produced by its Taiwan branch, Adam Technologies Int., Ltd.  Adam Tech. had a contract with General Electric Appliances ("GE") to design and create a custom connector for a wire harness to be used for GE washing machines and other appliances.  FAC ¶¶ 1, 19.  Adam Tech. was contacted by Well Shin, who requested to buy the part for use in a wire harness it was manufacturing for GE.  *Id.* ¶ 2.  To protect its intellectual property, Adam Tech. and Well Shin entered into the Non-Disclosure Non-Compete Agreement (the "Agreement") on January 23, 2015, which was facilitated by Conntek.  *Id.* ¶¶ 4, 22.  Conntek "is believed to have extensive ties to and is affiliated with" Well Shin.  *Id.* ¶ 16.  Well Shin then purchased the connector product from Adam Tech.  *Id.* ¶ 23.

In July or August of 2017, Well Shin began to complain about the quality of the connector and allegedly refused to pay for delivered stock and outstanding invoices.  *Id.* ¶ 24.  Adam Tech. alleges that these were false and unsubstantiated claims, insinuating that Well Shin began making

---

"Plf's OTSC Ltr." and Defendants' letter in response to the OTSC (D.E. 103) will be referred to as "Defs' OTSC Ltr.".

[2] The factual background is taken from Plaintiff's First Amended Complaint (the "FAC").  D.E. 77.  The parties also submitted declarations and exhibits in support of and opposition to the instant motions to dismiss and the OTSC.  The Court discusses which documents it considered in deciding the motions when discussing the applicable legal standards below.

the false claims because it was manufacturing the connector part itself or through other vendors or manufacturers. *Id.* ¶¶ 24-26.

Adam Tech. subsequently sued Conntek, Well Shin, and Well Shin Technology Co. Ltd. ("Well Shin Tech."), asserting claims for patent infringement, breach of contract, Lanham Act violations, and New Jersey unfair competition violations. In response, Defendants filed a motion to dismiss for lack of jurisdiction, insufficient service of process, and failure to state a claim. D.E. 11. On August 12, 2019, this Court granted Defendants' motion as to Well Shin Tech. for lack of personal jurisdiction pursuant to Rule 12(b)(2). Aug. 12 Opinion at 6-11, D.E. 37. This Court also quashed service as to Well Shin and Conntek because service was improper as to both entities, and granted Plaintiff leave re-serve these Defendants. *Id.* at 11-14. Because the motion was granted on these grounds, the Court did not address Defendants' arguments as to dismissal for failure to state a claim.

Plaintiff served Conntek on September 13, 2019, D.E. 48, and on October 29, 2019, Conntek renewed its motion to dismiss pursuant to Rule 12(b)(6), D.E. 47. Plaintiff, however, has faced difficulties in serving Well Shin, a Chinese entity, and requested multiple extensions of time to effectuate service. D.E. 48, 50, 60, 65, 69. Magistrate Judge Waldor granted Plaintiff's initial requests for extensions such that Plaintiff was required to serve Well Shin by May 11, 2020. D.E. 66. On May 4, 2020, Plaintiff filed a letter requesting at least an additional 60 days to effect service due to delays caused by the COVID-19 pandemic. D.E. 69. Defendants filed a letter opposing Plaintiff's request for another extension, indicating that "the agencies responsible for serving documents on Well Shin [in China] report that they have been operating regularly throughout the coronavirus outbreak." D.E. 73. On June 11, 2020, Judge Waldor entered a text order on the docket requiring Plaintiff to submit a letter "describing the efforts made to serve Wellshin in

China" by June 25, 2020.  D.E. 80.  Plaintiff filed its letter on June 23, 2020, which included a certification from Plaintiff's attorney in China, and requested an additional 120 days to effect service.  D.E. 86.  Defendants filed a letter in opposition.  D.E. 87.  Well Shin also filed its motion to dismiss, which seeks to dismiss the claims against it for, among other things, insufficient service of process.  D.E. 94.

On October 29, 2019, Conntek filed its second motion to dismiss, seeking to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  D.E. 47.  The Court granted Conntek's motion and dismissed the Complaint as to Conntek.  *See* May 5, 2020 Opinion, D.E. 70.  The Court, however, granted Adam Tech. "leave to file an Amended Complaint with respect to the dismissed claims."  *Id.* at 10.  Adam Tech. subsequently filed the FAC, which re-pleads each claim of the Complaint and asserts new claims for "bad faith of defendants" (Count Five) and a claim for common law unfair competition (Count Six).  D.E. 77.

On June 23, 2020, the Court entered a stipulation that dismissed Plaintiff's patent infringement, Lanham Act, and New Jersey Unfair Competition Act claims.  D.E. 77.  The remaining claims asserted in the FAC are for breach of contract and other state-law based common law causes of action.  In their motions to dismiss, Defendants seek to dismiss this matter for lack of subject-matter jurisdiction, D.E. 84, 94, because the FAC states that this Court has subject-matter jurisdiction through the dismissed federal intellectual property-based claims, FAC ¶ 10.  Plaintiff briefly addressed these arguments in its opposition brief, arguing that the Court has diversity jurisdiction, but failed to provide the Court with information by which it could determine if such jurisdiction exists.  *See, e.g.*, Plf's Conntek Opp. at 6.  As a result, on November 4, 2020,

---

[3] Well Shin initially joined in this motion but then withdrew from the motion after Judge Waldor granted one of Plaintiff's requests for an extension of time to effect service.  D.E. 57.

this Court entered the OTSC requiring the parties to address whether there is diversity jurisdiction. D.E. 99.

## II.  SUBJECT MATTER JURISDICTION

### A.  Legal Standard

The Court first addresses Defendants' arguments to dismiss this matter for lack of subject-matter jurisdiction.  In deciding a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.[4]  A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (citing *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)).  Defendants raise a facial attack in their motions to dismiss, and the parties' responses to the OTSC create a factual attack.

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss.  *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).  The burden is on the plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).  Thus, a district court must find that "the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the District Court" to overcome a facial attack.  *Culver v. U.S. Dep't of Labor Occupational Safety & Health Admin.*, 248 F. App'x 403, 406 (3d Cir. 2007) (citing

---

[4] This Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998).

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).  "To resolve a factual challenge, the 'court may look beyond the pleadings to ascertain the facts.'"  *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  Again, the plaintiff has the ultimate burden of proof to establish that diversity jurisdiction exists by a preponderance of the evidence.  *Id.*

### B.  Analysis

As discussed, Plaintiff initially pled that subject- matter jurisdiction existed by virtue of its patent and trademark claims, asserting federal question jurisdiction.  FAC ¶ 10.  After Plaintiff voluntarily dismissed these claims, it contends that this Court has diversity jurisdiction.  Plf's OTSC Ltr.  Defendants argue that this matter must be dismissed because Plaintiff only pleads federal question jurisdiction based on its intellectual property counts, *see, e.g.*, Conntek Br. at 17, and Plaintiff fails to establish that diversity jurisdiction exists, Defs' OTSC Ltr. at 2-3.

Federal district courts have diversity jurisdiction where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states."  28 U.S.C. § 1332(a).  As discussed in the OTSC, the FAC does not plead facts by which the Court can determine whether diversity jurisdiction exists.  Plaintiff fails to plead that the Court has diversity jurisdiction, and pleads no facts regarding the citizenship of any party or the amount in controversy.  Plaintiff, therefore, does not facially establish that this Court has subject matter jurisdiction.  But because these deficiencies could conceivably be cured through an amended pleading, the Court will not dismiss the matter on these grounds and turns to Defendants' factual challenge.  *See GBForefront, L.P.*, 888 F.3d at 36 (concluding that although the defendant's facial challenge was successful, the matter would be remanded rather than dismissed to provide the plaintiff with an opportunity to remedy its jurisdictional allegations by filing a motion to amend).

In their response to the OTSC, Defendants contend that even with the additional information provided by Plaintiff regarding diversity jurisdiction, Plaintiff still fails to establish that jurisdiction exists.  Defs' OTSC Ltr. at 2.  Plaintiff is a limited liability company.  "[A] limited liability company is a citizen of all the states of its members."  *GBForefront, L.P.*, 888 F.3d at 34.  Plaintiff contends that it has two members – Mr. De Vito, a New Jersey domiciliary, and the "Spousal Lifetime Access Trust".  Plf's OTSC Decl. ¶ 4, D.E. 101; Plf's OTSC Ltr. at 4.  When a business entity itself consists of other entities, citizenship "must be traced through however many layers of partners or members there may be."  *GBForefront, L.P.*, 888 F.3d at 36.  Relevant here, "the citizenship of a traditional trust is based solely on that of its trustee."[5]  *Id.* at 39.

In this instance, Plaintiff indicates that the trustee of the Spousal Lifetime Access Trust is also a New Jersey resident.  Plf's OTSC Decl. ¶ 4.  Stating that a party is a "resident" rather than a citizen or domiciliary of a state is "jurisdictionally inadequate."  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012).  But Plaintiff also avers that the trustee lives and works in New Jersey, Plf's OTSC Decl. ¶ 4, and Defendants provide no evidence demonstrating that the trustee has a connection with any other state.  Accordingly, the Court concludes that Plaintiff establishes by a preponderance of the evidence that the trustee of the Spousal Lifetime Access Trust is a New Jersey citizen.  *See Schwartz v. Kuo*, No. 13-5227, 2014 WL 12613410, at *1 (D.N.J. Jan. 23, 2014) (explaining that to determine domicile a court considers multiple factors including the individual's residence and place of business (quoting *McCann v. Newman*

---

[5] Whether a trust is a traditional or business trust impacts the Court's jurisdictional citizenship analysis. *GBForefront, L.P.*, 888 F.3d at 39.  A traditional trust "facilitates a donative transfer, while a business trust implements a bargained-for exchange." *Id.* at 40.  While not addressed by Plaintiff, the Court assumes that the trust at issue here is a traditional trust because its name, the Spousal Lifetime Access Trust, indicates a donative transfer.

*Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006))).  Accordingly, because its members are New Jersey citizens, Adam Tech. is a citizen of New Jersey for diversity jurisdiction purposes.

As for the citizenship of Defendants, both Conntek and Well Shin are corporations.  A corporation is deemed to be a citizen of both the state where it has its principal place of business and the state in which it is incorporated.  *See Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016) (holding that a corporation is "considered a citizen of its State of incorporation" and "a citizen of the State where it has its principal place of business"); *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (holding the same).  Plaintiff maintains that Conntek is incorporated and has its headquarters in Wisconsin.  Plf's OTSC Decl. ¶ 5.  Thus, it appears that Conntek is a citizen of Wisconsin.  Finally, Plaintiff contends that Well Shin is a Chinese corporation that is also physically based in China.  *Id.*  Consequently, the parties are completely diverse.

Turning to the amount in controversy, Defendants argue that Plaintiff fails to adequately establish that it satisfies the $75,000 threshold.  Defs' OTSC Ltr. at 9.  For purposes of determining the amount in controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 517 (D.N.J. 2007) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).  A plaintiff fails to meet the amount in controversy requirement only if it appears to a legal certainty, that the claim is really for less than the jurisdictional amount.  *Id.*

In this instance, Plaintiff maintains that it shipped $384,000 worth of product for which it was not paid and provides invoices in support.  *Id.* ¶ 6; Ex. B.  But the invoices indicate that Adam Tech International Ltd. Taiwan Branch ("Adam Tech International") actually sent the product.  Plf's OTSC Decl., Ex. B, D.E. 102.  Plaintiff pleads that Adam Tech International makes the

product, FAC ¶ 1, and that it is a subsidiary of Plaintiff, *see id.* ¶ 7 (stating that Plaintiff "and its Taiwan subsidiary branch" believe that Well Shin is manufacturing or subcontracted to manufacturer the connector itself). Plaintiff does not otherwise describe or provide evidence to establish the business relationship between the two entities. But even assuming that a parent subsidiary relationship exists, a parent and its subsidiary are separate legal entities. *See, e.g.*, *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (setting forth "the 'general principal of corporate law deeply ingrained in our economic and legal systems that a parent corporation is not liable for the acts of its subsidiaries'" (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal punctuation omitted))); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 371 (3d Cir. 2007) ("It is a bedrock principal . . . that courts must respect entity separateness unless doing so would work inordinate inequity."). Consequently, Plaintiff cannot rely on its subsidiary's injuries to establish its own damages.

Plaintiff, however, provides additional information as to the amount in controversy. First, Plaintiff pleads that Defendants refused to pay outstanding invoices and owe Plaintiff "a substantial amount of money above the jurisdictional limits." FAC ¶¶ 8, 24. Moreover, Mr. DeVito, Plaintiff's majority member, previously represented that Plaintiff incurred more than $400,000 in damages due to Defendants' failure to pay. *See* D.E. 27-1 at 1. Although Plaintiff fails to provide more precise information as to its damages, it is not required to do so at this stage. Moreover, Defendants do not contend that Plaintiff's allegations were not made in good faith, nor can the Court conclude that Plaintiff's allegations are insufficient with legal certainty. As a result, the Court concludes that Plaintiff sufficiently indicates that the amount in controversy exceeds $75,000. This Court, therefore, has diversity jurisdiction over the matter. Defendants' motions to dismiss are denied on these grounds. However, because the FAC fails to facially establish that

diversity jurisdiction exists, Plaintiff must file an amended complaint that remedies these jurisdictional defects within thirty (30) days.

### III.  INSUFFICIENT SERVICE OF PROCESS

#### A.  Legal Standard

Well Shin seeks to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(5), which permits dismissal for insufficient service of process.  Well Shin Br. at 3-7.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied."  *Wahab v. N.J. Dep't of Envtl. Prot.*, No. 12-6613, 2017 WL 4790387, at *5 (D.N.J. Oct. 24, 2017) (quoting *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).  "[T]he party asserting the validity of service bears the burden of proof on that issue."  *Grand Entertainment Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993).  Federal Rule of Civil Procedure 4 governs the requirements that must be met for proper service under Rule 12(b)(5).  *DiSantis v. Allied Constr., LLC*, No. 17-11379, 2018 WL 3647210, at *3 (D.N.J. July 31, 2018).

Rule 4(c) provides that a defendant must be served with a copy of the complaint and summons.  Fed. R. Civ. P. 4(c)(1).  Jurisdiction does not attach until a defendant is served in accordance with Rule 4(c).  *See Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 115 (3d Cir. 2009) ("Proper service is an essential step in establishing a district court's personal jurisdiction over the defendants.").  But "an amended complaint supercedes the original version."  *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002).  Consequently, "service of a superseded complaint with the summons does not fulfill the requirements of [Rule 4(c)]."  4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1093 (4th ed. 2020); *see also PNC Bank, N.A. v. Twin Tier Dev. Grp., Inc.*, No. 10-2020, 2010 WL 5300819, at *1 (M.D. Pa. Dec.

20, 2010) (refusing to enter default as to a defendant that was served with original complaint instead of the pleading that was amended before service occurred); *TCS Cap. Mgmt., LLC v. Apax Partners, L.P.*, No. 06-13447, 2008 WL 650385, at *10-11 (S.D.N.Y. 2008) (concluding that service was defective because the defendant was served with initial complaint after an amended pleading was filed).

### B.  Analysis

Well Shin concedes that it was served with the original Complaint in a manner authorized by the Hague Convention on the Service of Judicial and Extrajudicial Documents.[6]  But by the time Well Shin was served, Plaintiff had filed the FAC.  Well Shin Br. at 1.  Plaintiff has yet to serve Well Shin with the FAC, and states that "it is in the process" of serving Well Shin with the FAC.  Plf's Well Shin Opp. at 6.

Plaintiff argues that Well Shin is not prejudiced by the improper service because it was served with the original complaint, which is "identical . . . save for two additional causes of action based on the breach of contract."  Plf's Well Shin Opp. at 4.  Plaintiff also argued lack of prejudice in opposition to Well Shin's first motion to dismiss, and this argument was rejected by the Court. Aug. 13 Opinion at 13.  Again, a party's prejudice, or lack thereof, is not relevant to the determination of whether a party was served in accordance with Rule 4.  Moreover, in making this argument, Plaintiff relies on *International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977). Plf's Well Shin Opp. at 5.  In *International Controls*, the defendant was initially served with the operative complaint and summons such that service was proper and the court had personal

---

[6] Outside of the United States, a foreign corporation "must be served . . . in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).  Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).

jurisdiction over the party.  As a result, *International Controls* is inapposite to the argument Plaintiff makes here.  Because Well Shin has yet to be served with the FAC and summons, Plaintiff has not effected service on this Defendant in accordance with Rule 4 and the Court lacks personal jurisdiction over the entity.

"[D]istrict courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process."  *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).  Courts are "reluctant to dismiss an action" when a plaintiff acts in good faith but fails to effectuate proper service. *Ramada Worldwide Inc. v. Shriji Krupa, LLC*, No. 07-2726, 2013 WL 1903295, at *6 (D.N.J. Apr. 15, 2013); *see also Hoist v. New Jersey*, No. 12-5370, 2013 WL 5467313, at *3 (D.N.J. Sept. 30, 2013) (noting that courts will grant additional time to a plaintiff who acts in good faith to properly serve a defendant despite prior failure to effect proper service of process). If there is a reasonable prospect that service can be properly effectuated, courts quash service and provide a plaintiff with additional time to properly serve the defendant. *Hoist*, 2013 WL 5467313, at *5-6; *Ramada Worldwide, Inc.*, 2013 WL 1903295, at *6 (recommending that plaintiff be afforded with an additional sixty days to effect proper service after finding service was attempted in good faith but to the wrong address).

In this instance, it appears that Adam Tech. attempted to serve Well Shin in good faith, and there is no indication that the entity cannot be served.  Moreover, although service was procedurally improper, Well Shin was nevertheless provided with a copy of the Complaint and the FAC, and it has now filed three motions to dismiss.  Thus, Well Shin clearly has actual notice of this matter and has not been unfairly prejudiced by Plaintiff's improper service. *See Ramada Worldwide, Inc.*, 2013 WL 1903295, at *7 (granting plaintiff additional time to effect proper service because defendant had actual notice of the suit but "proper service is more than a formality,

12

and *must be effectuated*") (emphasis added).  As a result, Adam Tech. is granted leave to re-serve Well Shin.

  In sum, the Court concludes that service as to Well Shin was improper.  As a result, service is quashed and Plaintiff is granted an additional one hundred twenty (120) days to effect proper service of process on Well Shin.  Because Plaintiff is granted leave to re-serve Well Shin, Well Shin's motion to dismiss is denied without prejudice at this time.

## IV.  FAILURE TO STATE A CLAIM

### A.  Legal Standard

  Finally, Conntek seeks to dismiss the FAC for failure to state a claim.[7]  Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]"  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of

---

[7] Well Shin also seeks to dismiss the FAC on these grounds but because Well Shin has not been properly served, the Court only assesses the sufficiency of the pleadings as to Conntek.

truth. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### B. Analysis

#### 1. Breach of Contract (Count Four)

The Court previously dismissed the breach of contract claim as to Conntek because Plaintiff failed to plead that Conntek was a party to the Agreement or facts to demonstrate that Conntek and Well Shin were alter-egos. May 5 Opinion at 9-10. Once again, Conntek seeks to dismiss the breach of contract claim because it is not party to the Agreement. Conntek Br. at 7-8. To state a claim for breach of contract under New Jersey law, a party must allege, among other things, that "the parties entered into a contract." *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *see also Comly v. First Camden*, 36 A.2d 591, 593 (N.J. Sup. Ct. 1944) ("However, it may be said that as a general rule an action on a contract cannot be maintained against a person who is not a party to it.").[8] Plaintiff concedes that Conntek was not a party to the Agreement but once again argues that Conntek can be liable for breach of contract because it helped facilitate the agreement. Plf's Conntek Br. at 21-22.

"'Traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, beneficiary theories, waiver and estoppel.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, 183 (4th ed. 2001)). Adam Tech. relies on theories of piercing the corporate veil and assumption. Plf's Br. at 20-24.

---

[8] The parties have not provided any choice of law analysis and appear to presume that New Jersey substantive law applies to Plaintiff's claims. Accordingly, the Court also applies New Jersey substantive law.

Veil piercing is an equitable tool that, in limited circumstances, allows courts to disregard corporate formalities. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). The corporate veil may be pierced only if (1) the subsidiary was an alter ego or the parent "so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988); *see also N.J. Dept. of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983). Courts consider the following factors to determine whether an entity is an alter ego: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson*, 247 F.3d at 485; *see also Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. App. Div. 2006). At the motion to dismiss stage, a plaintiff "must plead specific facts with respect to how the affiliated entities and individuals allegedly controlled or dominated [the defendant]." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 427 (D.N.J. 2019) (refusing to pierce the veil because even assuming alleged transfers constituted a disregard of corporate formalities, the plaintiff otherwise failed to demonstrate the presence any of the other factors relevant to a veil-piercing analysis).

Although Plaintiff adds new facts to the FAC to support its alter-ego argument, the new allegations are insufficient to hold Conntek, a non-signatory, liable for breach of the Agreement. Plaintiff pleads that Conntek "is believed to have extensive ties to and is affiliated with Well Shin." FAC ¶ 16. Moreover, Plaintiff alleges that "[e]ach of the defendants acted as an agent for each

other of the defendants," that Defendants are vicariously liable to each other, and are alter egos. *Id.* ¶ 18.  Finally, Plaintiff contends that it "believed" that a Conntek employee worked for Well Shin or was authorized to speak on behalf of Well Shin "especially as his e-mails carried the Well Shin identifier."  *Id.*; *see also id.* ¶ 22 (explaining that email address was "Mack @ Well Shinn"). Plaintiff's assumption that the two entities are alter-egos, which seems to be based solely on an email address, is not enough to state a claim based on a theory of veil piercing.  Without specific allegations addressing how Well Shin dominated or controlled Conntek, the FAC falls short of sufficiently pleading  alter ego and/or piercing the corporate veil.

Plaintiff also seeks to hold Conntek liable for breach of contract based on the common law theory of assumption.  Plf. Conntek Opp. at 20-24.  Through the doctrine of assumption, an assignee may be required to perform acts that the assignor was originally required to perform under a contract.  *See Pargman v. Maguth*, 64 A.2d 456, 459 (N.J. App. Div. 1949) ("Defendant concedes that an assignee of a contract is usually not liable to the other contracting party to the contract assigned, unless such liability has been expressly or impliedly assumed"); *Westervelt v. Ciarletta*, 35 A.2d 896, 897 (N.J. Ch. 1944) (finding that officers and stockholders of closed corporation assumed burden of contract that the corporation entered into).  Here, although Conntek helped facilitate the Agreement, the FAC fails to plead facts by which the Court could conclude that Well Shin assigned the contract to Conntek, let alone that Conntek assumed any duties under the Agreement.  Accordingly, Plaintiff's breach of contract claim is dismissed as to Conntek.

### 2.   Bad Faith (Count Five)

Conntek also seeks to dismiss Count Five, which is in essence a claim for breach of the implied covenant of good faith and fair dealing.  FAC ¶ 66.  The implied covenant of good faith and fair dealing is a "component of every contract" that requires both parties to a contract act in "good faith[,]" that is, they must "adher[e] to 'community standards of decency, fairness, or reasonableness.'"  *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (internal citations omitted).  But "in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  *Noye v. Hoffman-La Roche Inc.*, 570 A.2d 12, 14 (N.J. App. Div. 1990); *see also FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (stating that the circuit did not believe that the New Jersey Supreme Court would support "the proposition that *non-parties* to a contract can be held liable for a breach of a contractual duty of good faith and fair dealing") (emphasis in original).  Because Plaintiff fails to plead sufficient facts demonstrating that Conntek was a party or bound by the Agreement, Plaintiff's bad faith claim fails as to Conntek.  Thus, Count Five is dismissed as to Conntek.

### 3.   Unfair Competition (Count Six)

In Count Six, Adam Tech. asserts a tort claim based on Defendants' "inherently unfair" conduct.  Specifically, Plaintiff alleges that Defendants "have not 'played fair' because Well Shin allowed or directed Conntek's actions, which led to the Agreement, and ultimately Defendants' breach of the Agreement through the misappropriation of Adam Tech.'s product.  FAC ¶ 67.  The "common law business tort" of unfair competition "is an 'amorphous' area of law and is generally defined as the 'misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value.'"  *ADP, LLC v. Kusins*, 215 A.3d 924, 951 (N.J. App. Div. 2019) (quoting *Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 600 (D.N.J. 2000)).  To state a *prima*

*facie* unfair competition claim, a plaintiff must allege bad faith or malicious conduct.  *Samsung Am. Inc. v. Park*, No. 2006 WL 3627072, at *17 (N.J. Ch. Div. Dec. 11, 2006); *see also Columbia Broad. Sys., Inc. v. Melody Recordings, Inc.*, 341 A.2d 348, 375 (N.J. App. Div. 1975) (explaining that the "essence" of an unfair competition claim "is fair play").  Finally, unfair competition claims frequently involve trademarks.  *See Bracca Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 454 (D.N.J. 2009) ("Furthermore, unfair competition claims under New Jersey statutory and common law generally parallel those under § 43(a) of the Lanham Act.").  But a common law unfair competition claim does not need to involve a protectable mark.  *See, e.g.*, *Vorhees v. Tolia*, No. 16-8208, 2020 WL 1272193, at *12 (D.N.J. Mar. 17, 2020) (concluding that the plaintiff stated an unfair competition claim based on defendants' alleged use of confidential and proprietary information as a competing company); *see also Duffy*, 97 F. Supp. 2d at 601 n.8 (explaining that the caselaw "do[es] not place rigid limitations upon the type of conduct proscribed under New Jersey's unfair competition law").

As discussed, Adam Tech. alleges that Well Shin made false claims about product quality, and that Well Shin refused to pay for the product and accept new stock.  Plaintiff further alleges that Well Shin fabricated these claims because it was and is manufacturing the product itself and providing it to GE.  FAC ¶¶ 24-26.  Finally, Plaintiff alleges that Conntek acted as the "go-between" between Plaintiff and Well Shin.  *Id.* ¶ 18.  These allegations are sufficient to state a common law unfair competition claim at the motion to dismiss stage.

Conntek argues that Plaintiff's unfair competition claim must be dismissed because it is duplicative of the breach of contract claim.  Conntek Reply at 13.  Generally, the Federal Rules of Civil Procedure permit parties to "plead alternative and inconsistent legal causes of action that arise out of the same facts."  *Nieves v. Lyft, Inc.*, No. 17-6146, 2018 WL 2441769, at *19 (D.N.J.

May 31, 2018).  Namely, Rule 8 states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2).  Thus, Plaintiff is not barred from asserting its breach of contract and unfair competition claim.  But more importantly, as pled, Plaintiff cannot pursue its breach of contract claim as to Conntek for the reasons stated above.  As a result, Plaintiff's unfair competition claim will not be dismissed as duplicative.

Conntek also contends that Plaintiff's claim for unfair competition has no legal effect because Plaintiff failed to adhere to Federal Rule of Civil Procedure 15(a) when asserting this claim in the FAC.  Plaintiff's initial Complaint did not assert a claim for common law unfair competition or bad faith.  D.E. 1.  In dismissing the initial Complaint as to Conntek for failure to state a claim, the Court provided Plaintiff with leave to file "an Amended Complaint with respect to the dismissed claims."  May 5 Opinion at 10.  Now, Plaintiff maintains that it filed an amended pleading "that addresses those concerns" about a lack of a contractual relationship.  Namely, Plaintiff contends that its new claims, while consistent with the breach of contract allegations, do not rely on a contractual relationship.  Plf's Conntek Op. at 6-7.  The Court agrees that Plaintiff's new claims were filed in accordance with the May 5 Opinion.  As a result, Plaintiff does not need to comply with Rule 15.[9]  The Court, therefore, will not dismiss the unfair competition claim on these grounds.

---

[9] Even if Plaintiff was required to comply with Rule 15, it's motion to amend would likely be granted as Defendants argue that Plaintiff unduly delayed in bringing futile claims.  Undue delay and futility are both grounds to deny a party's request for leave to file an amended complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) analysis.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).  As discussed, the Court concludes that Plaintiff states a common law unfair competition claim.  Accordingly, Plaintiff's claim is not futile.  As for Conntek's claim of delay, "only delays that are either 'undue' or 'prejudicial' warrant denial of leave to amend." *Geness v. Cox*, 902 F.3d 344, 364 (3d Cir. 2018) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252

## V.  CONCLUSION

For the reasons set forth above, the Court has diversity jurisdiction over this matter. Plaintiff, however, must file an amended complaint that cures the facial jurisdictional defects in the FAC within thirty (30) days.  In addition, service is quashed as to Defendant Well Shin and Plaintiff is granted an additional one hundred twenty (120) days to effect proper service of process. Accordingly, Well Shin's motion to dismiss (D.E. 94) is **DENIED** without prejudice at this time. Defendant Conntek's motion to dismiss (D.E.84) is **GRANTED in part** and **DENIED in part**. Plaintiff is granted leave to remedy the claims dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) in its amended pleading.  If Plaintiff's amended pleading fails to address the Rule 12(b)(6) deficiencies, the dismissed claims will be with prejudice as to Conntek.  An appropriate Order accompanies this Opinion.

Dated:  January 15, 2021

John Michael Vazquez, U.S.D.J.

---

F.3d 267, 273 (3d Cir. 2001)).  A delay becomes undue when it is "protracted and unjustified." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017).  Although Plaintiff waited approximately two years to assert its common law unfair competition claim, it did so in response to, and after, the dismissal of its breach of contract claim.  Thus, the amendment was not unjustified.  Finally, Conntek fails to identify any undue prejudice.